IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


DEANDRAE THOMAS    :
            :
    Petitioner,   :
            :
  v.         :   Civil Action No. 19-1984-GBW
            :
ROBERT MAY, Warden, and  :
ATTORNEY GENERAL OF THE :
STATE OF DELAWARE,   :
            :
    Respondents.  :

—————————————————

Deandrae Thomas. *Pro se* Petitioner.

Elizabeth R. McFarlan, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware.  Attorney for Respondents.

—————————————————


**MEMORANDUM OPINION**[1]


February 15, 2023
Wilmington, Delaware


———————————————

[1]This case was re-assigned to the undersigned's docket on September 7, 2022.

Williams, District Judge:

Petitioner Deandrae Thomas is an inmate at the James T. Vaughn

Correctional Center in Smyrna, Delaware.  Presently pending before the Court are

Petitioner's Petition and Amended Petition for a Writ of Habeas Corpus Pursuant

to 28 U.S.C. § 2254.  (D.I. 1; D.I. 7)  The State filed Answer in opposition, to

which Petitioner filed a Reply.  (D.I. 11; D.I. 14)  For the reasons discussed, the

Court will dismiss the Petitioner's request for habeas relief.

## I.   INTRODUCTION

> [In]n 2009 the Delaware State Police began an
> investigation into a drug trafficking ring in Kent County,
> Delaware. The investigation identified a number of
> participants including Marquinn Bordley ("Bordley"),
> William Loper ("Loper") and [Petitioner]. Law
> enforcement recorded the investigation in police reports.
> In furtherance of the investigation Detective Jeremiah
> Lloyd engaged in four separate hand-to-hand transactions
> of illicit drugs, primarily crack cocaine, with [Petitioner].
> As a result of these drug deals, law enforcement obtained
> [Petitioner's] phone number and obtained a court ordered
> Pen Register on his cellular telephone line.  As the
> investigation into the drug trafficking ring continued,
> including five additional drug transactions between
> [Petitioner] and Detective Lloyd, law enforcement sought
> and received a wire intercept, or wiretap order for
> [Petitioners'] cellular telephone line from the Superior
> Court. The order permitted the interception of all
> communication to and from [Petitioner's] cell phone
> beginning on May 7, 2010.  Intercepted communications
> from this phone line and additional information gathered
> through police surveillance led to additional wire orders
> on the phones of Bordley and Loper, among others.

During the pendency of the wiretap, law enforcement officers monitored the intercepted calls and conducted surveillance to corroborate information from the calls, when practicable. On May 7, 2010, officers intercepted calls from [Petitioner] indicative of extortion. [Petitioner] took a 1996 Pontiac Transport van from a drug client because of an unpaid debt. Additional calls showed [Petitioner] storing the vehicle, directing its use and planning for its disposal. Two days later on May 9, 2010, calls indicated that [Petitioner], who was a person prohibited from buying or possession firearms or ammunition, was directing one of his drug buyers to purchase ammunition for him,

On May 12, 2010, intercepted calls showed [Petitioner] delivering either crack cocaine or marijuana to other individuals including Karen Sebastian, Kyle Scott and David Vilone. Later in the month, calls indicated that [Petitioner] was in possession of a firearm.

Coinciding with the monitoring of [Petitioner's] phone, law enforcement officers intercepted calls between Bordley, Lope and Nathaniel Evans ("Evans"). These calls showed that two kilograms of cocaine were delivered by Juan Carlos Benitez to Bordley and Evans. Conversations from Bordley's phone line showed the distribution network for the cocaine leading law enforcement to conclude that [Petitioner] was part of this network. After Bordley obtained his kilogram of cocaine, call intercepts and surveillance indicated that [Petitioner] obtained approximately 3 ounces of cocaine from him.

On May 21, 2010, two days after the kilogram deal, Detective Lloyd purchased 3.5 grams of crack cocaine and an amount of marijuana from [Petitioner]. Later that day, intercepted calls showed [Petitioner] concerned about a handgun hidden in his car. Law enforcement executed a stop on this car and the gun was seized. In the days following, intercepted calls and surveillance showed

2

[Petitioner] purchasing drugs from Bordley and then selling them.

On one occasion intercepted calls indicated that [Petitioner] sold cocaine to Renell Carter ("Carter"). After the sale [Petitioner] discussed the cash he saw in Carter's possession and discussed a plan to rob her at gunpoint. [Petitioner], realizing that Carter would recognize him, arranged for Rakeem Peace ("Peace") to commit the actual crime by directing him on how to commit the robbery and providing him with a firearm. Calls between [Petitioner], Peace and Carter indicate that the robbery occurred but was not financially fruitful. Following the robbery, [Petitioner] can be heard arranging for the storage and retrieval of the gun and arranging more drug deals.

On June 13, 2010, [Petitioner] arranged for Frederick James ("James") to be lured to an area where it would be convenient for [Petitioner] to shoot at him (Exhibit E). Intercepted calls showed [Petitioner] arranging to pick up his gun, ordering someone to wipe fingerprints off of the ammunition and directing others to get James into position. Later in the investigation James informed police that he was shot at by [Petitioner] due to ongoing issues between the two. Police also seized shell casings in the area where the shooting occurred.

Delaware State Police executed arrest warrants related to this investigation on June 15, 2010. That afternoon the police learned that [Petitioner] was going to the residence at 139 Barney Jenkins Road in Felton, a location where [Petitioner] was known to store a firearm (Exhibit F). The police arrived while [Petitioner] was still in his vehicle outside of the residence. As the police entered the driveway, [Petitioner] rammed his vehicle into the driver's side of the police vehicle. The impact occurred as Trooper Ballenger was attempting to exit, trapping his leg in the door. After hitting the police vehicle, [Petitioner] reversed his vehicle and then proceeded forward again. This time

3

> [Petitioner] struck a second police vehicle head on. The
> police shot at the vehicle, which reversed at a high rate of
> speed and the vehicle finally came to rest after it hit a shed.

*State v. Thomas*, 2018 WL 1580553, at *1–2 (Del. Super. Ct. Mar. 28, 2018).

On January 26, 2012, Petitioner pled guilty to the following charges:  one count of racketeering (11 Del. C. § 1503); one count of trafficking more than 100 grams of cocaine (16 Del. C. § 4753A); two counts of trafficking cocaine 10-50 grams (16 Del. C. § 4753); one count of possession of a firearm by a person prohibited ("PFBPP") (11 Del. C. § 1448); one count of possession of a firearm during the commission of a felony ("PFDCF") (11 Del. C. § 1447A); two counts of possession of a deadly weapon during the commission of a felony ("PDWDCF") (11 Del. C. § 1447); one count of second degree assault (11 Del. C. § 612); one count of first degree reckless endangering (11 Del. C. § 604); one count of resisting arrest  (11 Del. C. § 1257); and one count of failure to stop for a police signal (21 Del. C. § 4103).  (D.I. 11 at 5)  On March 29, 2012, the Superior Court sentenced Petitioner to a total of fifty-eight years  of incarceration, suspended after serving thirty-seven years for probation.  (D.I. 10-2 at 9-18)  The Delaware Supreme Court affirmed Petitioner's conviction and sentence on November 9, 2012.  *See Thomas v. State*, 55 A.3d 839 (Table), 2012 WL 5499649, at *2 (Del. Nov. 9, 2012).

4

On September 26, 2013, Petitioner filed a *pro se* motion for an extension of time to file a motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") along with a motion to appoint counsel. (D.I. 10-1 at Entry Nos 45, 46)  The Superior Court granted the motions and appointed counsel.  (D.I. 10-1 at Entry No. 49)  On October 5, 2015, the Superior Court issued an order requiring Petitioner to file a Rule 61 motion on or before October 26, 2016.  (D.I. 10-1 at Entry No. 62)  Petitioner's original post-conviction counsel was unable to continue his representation of Petitioner and, on December 21, 2015, the Superior Court appointed substitute post-conviction counsel.  (D.I. 10-1 at Entry No. 55)  Substitute post-conviction counsel filed a Rule 61 motion in October 2016 along with a motion for leave to file an untimely amended Rule 61 motion.  (D.I. 10-1 at Entry Nos. 58-68)  On October 5, 2016, the Superior Court granted the motion for leave to file an untimely amended Rule 61 motion, and ordered that the amended Rule 61 motion must be filed by October 20, 2016.  (D.I. 10-1 at Entry No. 60)  In March 2017, the prothonotary was unable to locate the Rule 61 motion and motion to file an untimely Rule 61 motion that substitute post-conviction counsel had filed back in October 2016.  (D.I. 10-1 at Entry No. 66)  Consequently, on March 15, 2017, the Superior Court ordered the prothonotary to affix the time stamp of October 3, 2016 to the copies of the Rule 61 motion

provided by substitute counsel. (*Id.*) The State filed a response to the October 3, 2016 motion on July 31, 2017. (D.I. 10-1 at Entry No. 70)

On March 28, 2018 a Superior Court Commissioner issued a Report recommending that Petitioner's Rule 61motion be denied. The Superior Court adopted the Report and Recommendation on May 8, 2018 and denied the Rule 61 motion as procedurally barred and meritless. *See Thomas*, 2018 WL 1580553, at *5; (D.I. 10-1 at Entry No. 77; D.I. 10-13 at 4) The Delaware Supreme Court affirmed that decision on May 20, 2019. *See Thomas v. State*, 211 A.3d 1074 (Table), 2019 WL 2183830, at *1 (Del. May 20, 2019), *corrected* (June 5, 2019).

On October 10, 2019, Petitioner filed a second Rule 61 motion. (D.I 10-1 at Entry Nos. 91 & 92; D.I. 10-18 at 9-16) The Superior Court summarily dismissed the second Rule 61 motion on October 31, 2019 for being procedurally barred. (D.I. 10-18 at 7-8*)* Petitioner filed a motion for reconsideration (D.I 10-1 at Entry No. 95), which the Superior Court dismissed on November 21, 2019. (D.I. 10-1 at Entry No. 96; 10-18 at 5-6) The Delaware Supreme Court affirmed the Superior Court's dismissal of Petitioner's second Rule 61 motion on April 7, 2020. *See Thomas v. State*, 228 A.3d 689 (Table), 2020 WL 1814047, at *1 (Del. Apr. 7, 2020), *rehr'g en banc denied* (May 14, 2020).

By letter dated October 8, 2019, Petitioner filed in this Court a form habeas Petition with attachments, asking the Court to stay and abey consideration of his

6

claims while he attempted to exhaust state remedies in the Delaware state courts. (D.I 1) Petitioner filed a formal motion requesting a stay on October 10, 2019 (D.I. 3), which the Honorable Leonard P. Stark granted on December 19, 2019. (D.I. 6) The first Petition asserts three claims: (1) miscarriage of justice based on newly discovered evidence supporting his argument that his plea was coerced (D.I. 1 at 5; D.I 1-1 at 5-6); (2) defense counsel provided ineffective assistance during the plea process and on direct appeal for providing bad legal advice about the plea and conducting a faulty investigation into Petitioner's post-traumatic stress disorder triggered in the presence of police (D.I. 1 at 5; D.I. 1-1 at 6-9); and (3) defense counsel provided ineffective assistance and abandoned his duty of representation by permitting Detective Lloyd to attend the pre-plea meeting with State because it created a coercive atmosphere that rendered Petitioner's guilty plea involuntary. (*See* D.I. 1-1 at 8; D.I. 3 at 7 in C.A. 20-1361)

On October 7, 2020, upon the completion of his second Rule 61 proceeding in the Delaware state courts, Petitioner filed in this Court a completely new form application for habeas relief and a memorandum in support without identifying his existing case. The filing of those documents initiated the opening of a new habeas case. (*See* D.I. 1 and D.I. 3 in *Thomas v. May*, Civ. A. 20-1361-LPS) Upon determining that the October 2020 filings were intended to be filed in Petitioner's original habeas proceeding that had been stayed and, in effect, together constituted

7

Petitioner's notice that exhaustion was completed, the Court issued an Order for the second habeas case to be administratively closed and the form application to be filed in this proceeding as an Amended Petition. (D.I. 7) The Memorandum in Support was not filed in the instant case at that time, and the State was only ordered to respond to the claims raised in the first Petition and Amended Petition. (D.I. 9)

The Memorandum of Support that Petitioner filed in the now administratively closed case supplements Petitioner's original arguments and essentially adds two arguments: (1) the State violated state court rules, professional rules of ethics, and *Brady v.* Maryland, 373 U.S. 83 (1963) by not informing the Superior Court that Detective Lloyd attended the pre-plea meeting in the courthouse holding area; and (2) defense counsel abandoned Petitioner at a critical stage of his criminal proceeding in violation of *United States v. Cronic* 466 U.S. 648 (1984) by permitting Detective Lloyd to be present at the pre-plea meeting, and the Superior Court erred by not analyzing the ineffective assistance of counsel argument he presented in his first Rule 61 proceeding pursuant to *Cronic.* (D.I. 3 at 3-17 in *Thomas*, Civ. A. 20-1361-LPS). Thus, after reviewing the first Petition, Amended Petition, and Memorandum in Support (*See Thomas*, Civ. A. 20-1361-LPS) (hereinafter collectively referred to as "Petition"), the Court views Petitioner as having raised the following four Claims: (1) defense counsel provided

8

ineffective assistance during the plea process by failing to investigate Petitioner's post-traumatic stress disorder that is triggered by being around police officers (D.I. 1-1 at 8); (2) defense counsel provided ineffective assistance and/or abandoned his duty of representation by permitting Detective Lloyd to attend the pre-plea meeting with the State because the Detective's presence, in combination with the prosecutor's actions, created a coercive atmosphere that rendered Petitioner's guilty plea involuntary (*See* D.I. 1-1 at 8; D.I. 3 at 7, 17 in *Thomas*, Civ. A. 20-1361-LPS), and the Superior Court erred during his first Rule 61 proceeding by failing to review his ineffective assistance claim under *Cronic* (*See* D.I. 3 at 15-17 in *Thomas*, Civ. A. 20-1361-LPS); (3) the State prosecutor violated Superior Court Criminal Rule 11(e)(2) and Professional Rule of Conduct Rule 3.8 by not informing the Superior Court during his first Rule 61 proceeding that Detective Lloyd was present at the pre-plea meeting (D.I. 3 at 6 in *Thomas*, Civ. A. 20-1361-LPS); and (4) the State violated *Brady* during his Rule 61 proceeding by failing to disclose evidence that Detective Lloyd was present at the pre-plea meeting (D.I. 3 at 10 in *Thomas*, Civ. A. 20-1361-LPS).  The Court views Petitioner's assertion of newly discovered evidence/miscarriage of justice in his first Petition as an argument that he is entitled to a later starting date under AEDPA's statute of limitations.  (D.I. 1 at 5, 12)

## II.    ONE YEAR STATUTE OF LIMITATIONS

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003).   AEDPA prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).   AEDPA's limitations period is subject to statutory and equitable tolling.   *See Holland v. Florida*, 560 U.S. 631 (2010) (equitable tolling); 28 U.S.C. § 2244(d)(2) (statutory tolling).

10

Petitioner does not assert, and the Court does not discern, any facts triggering the application of § 2244(d)(1)(B) or (C).  In his first Petition, however, Petitioner asserts that he has newly discovered evidence of the coercion leading to his entering a guilty plea, and the circumstances surrounding the unavailability of that evidence over the past years demonstrates that he has suffered a miscarriage of justice.  More specifically, he has an "Investigative Report" from O'Rourke Investigative Associates dated October 18, 2018 which confirms his story that the investigative police officer in his criminal case – Detective Jeremiah Lloyd – was present at the pre-plea meeting that took place in the courthouse holding area prior to the final case review to discuss the charges against Petitioner.  (D.I. 10-17 at 29) During Petitioner's first Rule 61 proceeding, defense counsel freely acknowledged that he had called the meeting in the holding area with the prosecutor, Petitioner, and the defense team as part of the plea negotiation strategy, but explained that  his defense-team investigator – Gary K. Marshall – was the fourth attendee at the meeting, not Detective Lloyd.  (D.I. 10-8 at 159-63)  One premise for Petitioner's "coerced plea" claim, both in this proceeding and in his first Rule 61 proceeding, was that Detective Lloyd's presence and actions during the meeting (combined with the prosecutor's actions) amounted to coercion.  The Superior Court rejected Petitioner's contention of coercion after finding defense counsel's version of the meeting (asserted in his Rule 61 affidavit) to be more credible than Petitioner's

11

version. *See Thomas*, 2018 WL 1580553, at *4 (Commissioner stated "I find Trial Counsel's affidavit in conjunction with the record, more credible than [Petitioner's] claims that his counsel' representation was ineffective.")

Here, Petitioner appears to assert his "newly discovered evidence" argument as a way to trigger a later starting for the limitations period under § 2244(d)(1)(D). The Court is not persuaded.  Determining if a petitioner has exercised due diligence for § 2244(d)(1)(D) purposes is context-specific, and the essential question is "whether the petitioner should be expected to take actions which would lead him to the information." *Wilson v. Beard*, 426 F.3d 653, 661-62 (3d Cir. 2005).  The later starting date under § 2244(d)(1)(D) commences "when the factual predicate of a claim could have been discovered through the exercise of due diligence, not when it was actually discovered." *Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir. 2004).  While this standard does not require "the maximum feasible diligence," it does require reasonable diligence in the circumstances, and a petitioner can only avail himself of a later accrual date "if vital facts could not have been known." *Id.*  Although Congress did not define the term "factual predicate" as used in § 2244(d)(1)(D), the Third Circuit has defined "factual predicate" as "vital facts underlying [petitioner's] claims." *McAleese v. Brennan*, 483 F.3d 206, 214 (3d Cir. 2007).  As further explained by the Second Circuit, "if new information is discovered that merely supports or strengthens a claim that could have been

properly stated without the discovery, that information is not a 'factual predicate' for purposes of triggering the statute of limitations under § 2244(d)(1)(D)." *Rivas v. Fischer*, 687 F.3d 514, 535 (2d Cir. 2012). Finally, when evaluating a petitioner's diligence, a court must consider that the "statute's clear policy calls for promptness." *Johnson v. United States*, 544 U.S. 295, 311 (2005) (discussing 28 U.S.C. § 2255(d)(4)).

Under these principles, if Petitioner's newly discovered evidence – the October 18, 2018 Investigative Report – is a "factual predicate" of the Claims in the Petition for § 2244(d)(1)(D) purposes, then October 18, 2018 (or the date on which Petitioner asked O'Rourke Investigative Associates to conduct the investigation) would constitute the relevant starting date for the limitations period. Nevertheless, after considering the totality of the circumstances, the Court concludes Petitioner's receipt of the Investigative Report (or date of hiring O'Rourke Investigative Associates) does not trigger a later starting date. For instance, the information in the Report is not new. By his own admission, Petitioner has repeatedly stated over the years that Detective Lloyd was present at the pre-plea meeting. Petitioner was also on notice that defense counsel did not recall Detective Lloyd being present at the meeting when defense counsel filed his Rule 61 affidavit in the Superior Court on May 3, 2017 (during Petitioner's Rule 61 proceeding). (D.I. 10-1 at Entry No. 68) And, the prosecutor's response to the

13

Rule 61 motion filed on July 31, 2017 omitted the presence of Detective Lloyd at the meeting. (D.I. 10-8 at 164-173)

Additionally, Petitioner has not explained how diligently he pursued the information corroborating his assertion that Detective Lloyd was present at the meeting. There is no reason to believe Detective Lloyd would not have provided the relevant information at any point in time had he been asked to do so.

Given this record, the Court concludes that the Investigative Report does not trigger a later starting date of October 2018 under § 2244(d)(1)(D). Consequently, the one-year period of limitations began to run when Petitioner's convictions became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), if a state prisoner appeals a state court judgment but does not seek certiorari review, the judgment of conviction becomes final, and the statute of limitations begins to run, upon expiration of the ninety-day time period allowed for seeking certiorari review. *See Kapral v. United States*, 166 F.3d 565, 575, 578 (3d Cir. 1999); *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999). In this case, the Delaware Supreme Court affirmed Petitioner's conviction on November 9, 2012, and he did not seek review by the United States Supreme Court. As a result, his judgment of conviction became final on February 8, 2013. Applying the one-year limitations period to that date, Petitioner had until February 8, 2014 to timely file a habeas petition. *See Wilson v. Beard*, 426 F.3d 653, 662-64

14

(3d Cir. 2005) (Fed. R. Civ. P. 6(a) applies to AEDPA's limitations period);

*Phlipot v. Johnson*, 2015 WL 1906127, at *3 n. 3 (D. Del. Apr. 27, 2015)

(AEDPA's one-year limitations period is calculated according to the anniversary

method, *i.e.*, the limitations period expires on the anniversary of the date it began

to run).  Petitioner, however, did not file the instant Petition until October 8, 2019,[2]

more than five years after that deadline.  Thus, the Petition is time-barred and

should be dismissed, unless the limitations period can be statutorily or equitably

tolled, or Petitioner makes a gateway showing of actual innocence.  *See Jones,* 195

F.3d at 158; *see Wallace v. Mahanoy*, 2 F.4th 133, 151 (3d Cir. 2021) (explaining

that actual innocence is an "exception to the statute of limitations" rather than an

"extension to the statute of limitations via equitable tolling.").  The Court will

discuss each doctrine in turn.

## A.  Statutory Tolling

Pursuant to § 2244(d)(2), a properly filed state post-conviction motion tolls

AEDPA's limitations period during the time the motion is pending in the state

---

[2]The Petition is not dated, and there is no certificate of service.  Petitioner did,
however, include a cover letter with his Petition that is dated October 8, 2019.
(D.I. 1-2 at 1)  Pursuant to the prison mailbox rule, the Court adopts October 8,
2019 as the filing date. *See Longenette v. Krusing*, 322 F.3d 758, 761 (3d Cir.
2003) (the date on which a prisoner transmitted documents to prison authorities for
mailing is to be considered the actual filing date).

courts, including any post-conviction appeals, provided that the motion was filed and pending before the expiration of AEDPA's limitations period. *See Swartz v. Meyers*, 204 F.3d 417, 420-24 (3d Cir. 2000). A post-conviction motion is "'properly filed' for statutory tolling purposes when its delivery and acceptance is in compliance with the state's applicable laws and rules governing filings, such as the form of the document, any time limits upon its delivery, the location of the filing, and the requisite filing fee." *Crump v. Phelps*, 572 F. Sup. 2d 480, 483 (D. Del. 2008). The limitations period is also tolled for the time during which an appeal from a post-conviction decision could be filed even if the appeal is not eventually filed. *See Swartz*, 204 F.3d at 424. The limitations period, however, is not tolled during the ninety days a petitioner has to file a petition for a writ of certiorari in the United States Supreme Court regarding a judgment denying a state post-conviction motion. *See Stokes v. Dist. Att'y of Philadelphia*, 247 F.3d 539, 542 (3d Cir. 2001).

Petitioner filed his first Rule 61 motion on October 3, 2016,[3] more than two years after AEDPA's limitations period expired on February 8, 2014. Therefore, neither of Petitioner's two Rule 61 motions have any statutory tolling effect.

---

[3]The motion for an extension of time to file a Rule 61 motion that Petitioner filed in the Superior Court on September 26, 2013 does not trigger statutory tolling, because it was not a "properly filed" post-conviction motion for the purposes of § 2244(d)(2).

### B.  Equitable Tolling

The one-year limitations period may be tolled for equitable reasons in rare circumstances when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649-50.  With respect to the diligence inquiry, equitable tolling is not available where the late filing is due to the petitioner's excusable neglect. *Id.* at 651-52.  Additionally, the obligation to act diligently "does not pertain solely to the filing of the federal habeas petition, rather it is an obligation that exists during the period [the petitioner] is exhausting state court remedies as well." *LaCava v. Kyler*, 398 F.3d 271, 277 (3d Cir. 2005). As for the extraordinary circumstance requirement, "the relevant inquiry is not whether the circumstance alleged to be extraordinary is unique to the petitioner, but how severe an obstacle it creates with respect to meeting AEDPA's one-year deadline." *Pabon v. Mahanoy*, 654 F.3d 385, 401 (3d Cir. 2011).  An extraordinary circumstance will only warrant equitable tolling if there is "a causal connection, or nexus, between the extraordinary circumstance [] and the petitioner's failure to file a timely federal petition." *Ross v. Varano*, 712 F.3d 784, 803 (3d. Cir. 2013).

Petitioner contends that equitable tolling is warranted because his delay in filing the instant Petition was due to the State's refusal to provide him access to the

17

evidence of who was present at the cell block on the date of his guilty plea. (D.I. 14 at 6, 14) He alleges that he needed the information about who attended the pre-plea meeting in the cell block to exhaust state remedies for all of the claims he planned to bring in one complete federal habeas petition. (D.I. 14 at 16) This argument is unavailing. Petitioner had personal knowledge about the events of the pre-plea meeting, and has failed to explain why he was unable to file a protective habeas petition in this Court and request a stay while he was pursuing a way to support his claims. The fact that Petitioner requested a stay (which was granted) when he filed his first federal habeas petition in 2019 demonstrates his awareness of the "protective stay" method of complying with the statute of limitations.

The Court also does not view the Superior Court's action of granting Petitioner's motion to extend the time to file his first Rule 61 motion on November 15, 2013 as an extraordinary circumstance warranting equitable tolling. After granting the motion to extend the time of filing, the Superior Court appointed two different attorneys to represent Petitioner who, for some reason, did not file a Rule 61 motion until October 3, 2016. Even if the delay in filing the Rule 61 motion was due to post-conviction counsel's ignorance of Delaware's state postconviction procedures, this type of attorney error does not amount to an extraordinary circumstance for equitable tolling purposes. *See Fahy v. Horn*, 240 F.3d 239, 244 ("In non-capital cases, attorney error, miscalculation, inadequate research, or other

18

mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling."). Given these circumstances, the Court concludes that equitable tolling is not available to Petitioner on the facts he has presented.

### C. Actual Innocence

Finally, a credible claim of actual innocence may serve as an "equitable exception" that can overcome the bar of AEDPA's one-year limitations period. *See McQuiggin v. Perkins*, 569 U.S 383, 392 (2013); *Wallace*, 2 F. 4th at 150-151. Petitioner, however, does not assert any claim of actual innocence.

For all of these reasons, the Court concludes that the Petition is time-barred. Nevertheless, the statute of limitations defense is not a jurisdictional bar for habeas cases[4] and, given the murkiness surrounding the contradictory information revealed by the Investigative Report and the fact that the State has provided alternative arguments for finding Petitioner's arguments procedurally barred and/or meritless, the Court finds it prudent to address the State's additional arguments.

## III.   PROCEDURAL DEFAULT

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law.

---

[4]*See Holland*, 560 U.S. at 645.

*See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999);

*Picard v. Connor*, 404 U.S. 270, 275 (1971).  AEDPA states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).  This exhaustion requirement, based on principles of

comity, gives "state courts one full opportunity to resolve any constitutional issues

by invoking one complete round of the State's established appellate review

process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192

(3d Cir. 2000).

A petitioner satisfies the exhaustion requirement by demonstrating that the

habeas claims were "fairly presented" to the state's highest court, either on direct

appeal or in a post-conviction proceeding, in a procedural manner permitting the

court to consider the claims on their merits.  *See Bell v. Cone*, 543 U.S. 447, 451

n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).  If the petitioner raised

the issue on direct appeal in the correct procedural manner, the claim is exhausted

and the petitioner does not need to raise the same issue again in a state post-

conviction proceeding. *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir. 1997).

If a petitioner presents unexhausted habeas claims to a federal court, and further state court review of those claims is barred due to state procedural rules, the federal court will excuse the failure to exhaust and treat the claims as exhausted. *See Coleman v. Thompson*, 501 U.S. 722, 732, 750-51 (1991) (such claims "meet[] the technical requirements for exhaustion" because state remedies are no longer available); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006). Such claims, however, are procedurally defaulted. *See Coleman*, 501 U.S. at 749; *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor

21

external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent,"[5] then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *See Hubbard v.*

---

[5] *Murray*, 477 U.S. at 496.

*Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

The record reveals that Petitioner did not present Claims One, Three, and Four in his first Rule 61 motion. Instead, Petitioner presented Claim One to the Delaware courts for the first time in his second Rule 61 motion. The Superior Court summarily dismissed Claim One as procedurally barred under Rule 61(d)(2) and also as independently time-barred under Rule 61(i)(1) and Rule 61(i)(3). (D.I. 10-18 at 7-8) On appeal from that decision, Petitioner re-asserted Claim One (defense counsel did not investigate his PTSD) and, for the first time, presented Claim Three (prosecutor violated Superior Court Criminal Rule 11(e)(2) and Professional Rule of Conduct 3.8) as a new argument. (D.I. 10-17 at 9-11) The Delaware Supreme Court affirmed the Superior Court's dismissal of Petitioner's second Rule 61 motion "on the basis of and for the reasons assigned by the Superior Court's orders dated October 31, 2019 and November 21, 2019." *Thomas*, 2020 WL 1814047, at *1.

By applying the procedural bar of Rule 61(d)(2), Rule 61(i)(1), and Rule 61(i)(3), the Superior Court articulated a "plain statement" under *Harris v. Reed* that its decision rested on state law grounds. This Court has consistently held that Rules 61(i)(1) and (3) are independent and adequate state procedural rules

effectuating a procedural default.[6] *See Trice v. Pierce*, 2016 WL 2771123, at *4
(D. Del. May 13, 2016).  Therefore, the Court cannot review the merits of Claims
Two and Three absent a showing of cause for the default, and prejudice resulting
therefrom, or upon a showing that a miscarriage of justice will occur if the claim is
not reviewed.

In turn, the record reveals that Petitioner did not present Claim Four
(alleging that the State violated *Brady* by not providing evidence of Detective
Lloyd's presence at the pre-plea meeting) to the Delaware state courts in either of
his Rule 61 proceedings.  At this juncture, any attempt by Petitioner to raise the
Claims in a new Rule 61 motion would be barred as untimely under Delaware
Superior Court Rule 61(i)(1) and as second or successive under Rule 61(i)(2).  *See*
Del. Super. Ct. Crim. R. 61(i)(1) (establishing a one-year deadline for filing Rule
61 motions); Del. Super. Ct. Crim. R. 61(i)(2) (providing that second or successive
motions shall be summarily dismissed unless they meet the pleading requirements
of Rule 61(d)(2)(i) or (ii)).  Although Rule 61provides for an exception to its
procedural bars if a Rule 61 motion "asserts a retroactively applicable right that is

---

[6]Although the State correctly asserts that "this Court recently confirmed that Rule
61(d)(2) is an adequate state procedural rule precluding federal habeas [review],"
(D.I. 11 at 26), that decision was made "as applied" to the particular Petitioner's
situation. In this case, the Superior Court's reliance on Rule 61(i)(1) and (3), and
the Delaware Supreme Court's affirmance of that reliance, satisfies the procedural
default analysis.

newly recognized after the judgment of conviction is final," no such right is

implicated in the instant Claims.  Similarly, the exceptions to the bars contained in

Rule 61(i)(5) and (d)(2) do not apply to Petitioner's case, because he does not

allege actual innocence, lack of jurisdiction, or that a new rule of constitutional law

applies to Claim Four.

The foregoing analysis demonstrates that Claims One, Three, and Four are

procedurally defaulted, which means that the Court cannot review their merits

absent a showing of either cause and prejudice or that a miscarriage of justice will

result absent such review.  Even if Petitioner's contention that he did not have

"proof" supporting his statement that Detective Lloyd attended the pre-plea

meeting until he obtained the October 18, 2018 Investigative Report could

constitute cause – which the Court does not conclude – Petitioner cannot

demonstrate prejudice.  As discussed below, Petitioner's argument that defense

counsel abandoned him in violation of *Cronic*, or that defense counsel provided

ineffective assistance by creating a coercive environment rendering his guilty plea

involuntary, lacks merit.

Petitioner also has not satisfied the miscarriage of justice exception to the

procedural default doctrine because he has not provided new reliable evidence of

his actual innocence.  Thus, Claims One, Three, and Four are procedurally barred

from habeas review.

## IV.   MERITS ANALYSIS: CLAIM TWO

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d).  Pursuant to § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial.  28 U.S.C. § 2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).  A claim has been "adjudicated on the merits" for the purposes of § 2254(d) if the state court decision finally resolved the claim on the basis of its substance, rather than on a procedural or some other ground.  *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).  The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).  As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

When reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* § 2254(e)(1).  This

26

presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## A. State Courts Adjudicated Claim Two On The Merits

In his initial Rule 61 motion, Petitioner presented two claims of ineffective assistance of counsel: (1) defense counsel was ineffective for arranging a face-to-face meeting with the prosecuting attorney and an individual whom Petitioner believed was the State's chief investigating officer (Detective Lloyd) prior to requiring that Petitioner make a life-defining decision as to plead guilty or insist upon going to trial; and (2) defense counsel was ineffective in that he erroneously executed and had Petitioner execute a plea agreement that contained a recommendation for "open sentencing" and a P.S.I. because, under the terms of the plea agreement, the Court was required to sentence Petitioner to at least 24 years at Level V.  (D.I. 10-8 at 25, 29)  To support his first allegation of ineffective assistance (coercion), Petitioner stated that "[a]nother factor which impacted [his] mindset during and following the impromptu meeting (and ultimate decision to accept the plea offer) was his abject fear of police officers," and he indicated that

27

he had been or was planning to be evaluated for posttraumatic stress syndrome (PSTD).  (D.I. 10-8 at 22)

The Superior Court Commissioner interpreted these two arguments as freestanding claims, with ineffective assistance being alleged to constitute cause for failing to assert the freestanding claims in the proceedings leading to the judgment of conviction.  See Thomas, 2018 WL 1580553, at *3 (stating "None of [Petitioner's] claims were specifically raised at the plea, sentencing, or on direct appeal.").  The Commissioner denied the claims as procedurally barred under Rule 61(i)(3) for failure to raise them in the proceedings leading to Petitioner's judgment of conviction after finding that Petitioner did not demonstrate cause – the alleged ineffective assistance – and prejudice.  See Thomas, 2018 WL 1580553, at *3-5.  The Superior Court adopted the Commissioner's Report and Recommendation, specifically noting:

> [W]ith respect to [Petitioner's] two stated bases for his motion: (1)  [Petitioner] was fully advised by trial counsel regarding the nature and  purpose of the pre-plea meeting with opposing counsel, and the meeting resulted in a further reduction of the State's plea offer, and (2) [Petitioner] was fully informed by trial counsel regarding the inadvisability of requesting a presentence investigation."

(D.I. 10-13 at 4)  The Superior Court concluded by denying Petitioner's first Rule 61 motion "as procedurally barred and completely meritless."  (D.I. 10-3 at 4)

28

Petitioner appealed the Superior Court's decision to the Delaware Supreme

Court.  On appeal, Petitioner omitted his "open sentencing" argument and

presented only one claim for relief:  his guilty plea was involuntary because

defense counsel arranged a meeting prior to his plea with the prosecutor and

someone whom Petitioner believed was the State's chief investigating officer in his

case – Detective Lloyd – and both individuals "bombarded [him] with taunts,

challenge[s] and insults."  (D.I. 10-11 at 25)  Petitioner argued that the

circumstances of the meeting amounted to duress and coercion, because the

remarks offered by the prosecutor and the individual Petitioner believed was

Detective Lloyd left Petitioner believing he had no choice but to accept the plea

offer that was extended to him.  (D.I. 10-11 at 25)  After the State filed its

response, Petitioner received the October 2018 Investigative Report.  (D.I. 10-14 at

19)  He sought, and received, permission from the Delaware Supreme Court to file

an out-of-time reply brief in order to present the Investigative Report and further

his contention that his guilty plea was coerced. (*Id.*)  In his reply brief, Petitioner

argued that the "information contained in the Investigative Report is a paramount

importance to [Petitioner's] claim insofar as it contradicts information previously

imparted to the Superior Court, and at the same time bolsters [Petitioner's]

credibility with respect to his assertion of duress." *(Id.* at 21)  Petitioner contended

that

the Superior Court abused its discretion by affording little to no weight (and essentially rejecting altogether) [Petitioner's] assertions, and by disregarding the impact of [the prosecutor] and Detective Lloyd at the meeting had upon [Petitioner's] psyche.  Additionally, the Superior Court seems to have essentially denied [Petitioner's] ineffective assistance of counsel claim based upon a credibility contest.

(D.I. 10-14 at 22)

The Delaware Supreme Court affirmed the denial of Petitioner's first Rule 61 motion "for the reasons assigned by the Superior Court in the Commissioner's proposed findings of fact and conclusions of law dated March 28, 2108, and the Superior Court's order adopting the Commissioner's report dated May 8, 2018. *Thomas*, 2019 WL 2183830, at *1.  In a footnote, the Delaware Supreme Court explained that the Rule 61 motion was time-barred, but stated that it had considered Petitioner's "coerced guilty plea claim" on the merits.  *See Thomas*, 2019 WL 2183830, at *1 n.1.  The Delaware Supreme Court also explained that it had considered the Investigative Report and concluded that it "had no bearing on the Superior Court's conclusion" that Petitioner's guilty plea was voluntary.  *Id.*

Based on the foregoing, the Court concludes that the Delaware state courts adjudicated Claim Two on the merits.  Consequently, Petitioner will only be

30

entitled to habeas relief if the Delaware state court[7] decisions were either contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

## B. Applicable Supreme Court Precedent

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688. In the context of a guilty plea, a petitioner

---

[7]Because the Superior Court provides a more in-depth analysis of Petitioner's instant ineffective assistance of counsel Claims, the Court will refer to both state court decisions when reviewing these Claims. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1193-94 (2018) (reiterating that when a higher court affirms a lower court's judgment without an opinion or other explanation, federal habeas law employs a "look through" presumption and assumes that the later unexplained order upholding a lower court's reasoned judgment rests upon the same grounds as the lower court judgment).

satisfies *Strickland*'s prejudice prong by demonstrating that, but for counsel's error, there is a reasonable probability that he would have insisted on proceeding to trial instead of pleading guilty. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). A court many deny an ineffective assistance of counsel claim by only deciding one of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

However, in *United States v. Cronic*, 466 U.S. 648 (1984), the United States Supreme Court articulated a limited exception to *Strickland*'s requirement that a petitioner must demonstrate both deficient performance and prejudice in order to prevail on an ineffective assistance of counsel claim, holding that there are three situations in which prejudice caused by an attorney's performance will be presumed: where the defendant is completely denied counsel at a critical stage; where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing;" or where the circumstances are such that there is an extremely

32

small likelihood that even a competent attorney could provide effective assistance, such as when the opportunity for cross-examination has been eliminated. *See Cronic*, 466 U.S. at 659 & n.25. The *Cronic* presumption of prejudice only applies when counsel has completely failed to test the prosecution's case throughout the entire proceeding. *See Bell v. Cone*, 535 U.S. 685, 697 (2002).

Petitioner contends that the Delaware state courts should have reviewed Claim Two under the presumed-prejudice standard of *Cronic*. (D.I. 3 at 7-8 in *Thomas*, Civ. A. 20-1361-LPS) He asserts that the Investigative Report supports his argument that defense counsel's actions during the pre-plea meeting in the holding cell constituted an abandonment of his representation at a critical stage of the proceeding. (*Id.*)

Petitioner's reliance on *Cronic* is misplaced. Although the term "abandon" was used once or twice in his Rule 61 motion (*See* 10-8 at 22, 28), Petitioner did not fairly present an actual or constructive denial of counsel claim under *Cronic* to the Delaware state courts. Consequently, Petitioner's *Cronic* argument is procedurally defaulted. Even if the Court were to consider Petitioner's *Cronic* "complete denial of counsel" argument, relief is only available when "when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Cronic*, 466 U.S. at 659, n. 25. Here, defense counsel was neither totally absent nor in some way prevented from assisting

33

Petitioner. *Id.*   During the plea process, defense counsel met with Petitioner on multiple occasions, reviewed the applicable law and facts of the case with Petitioner, and provided examples of three possible plea offers the State may extend along with possible related penalties. (D.I. 10-8 at 19-20, 159-162)  In addition, the transcript of Petitioner's plea hearing demonstrates that defense counsel actively represented Petitioner during the plea colloquy. (D.I. 10-2 at 19-31)  Thus, the Delaware state courts did not unreasonably apply federal law by failing to reviewing Claim Two under *Cronic*.

### C.  Section 2254(d) Review

Having determined that *Cronic* is inapplicable, the Court finds that the Superior Court correctly identified and articulated the *Strickland/Hill* standard as governing Petitioner's instant ineffective assistance of counsel contention.[8]  As a result, the Superior Court's decision was not contrary to clearly established Supreme Court precedent. *See Fahy v. Horn*, 516 F.3d 169, 196 (3d Cir. 2008) (Supreme Court of Pennsylvania's decision was not "contrary to" clearly established Federal law because appropriately relied on its own state court cases, which articulated the proper standard derived from Supreme Court precedent);

---

[8]The Superior Court cited to *Strickland* without citing *Hill*. Nevertheless, the standard the Superior Court articulated correctly stated the standard set forth in both *Strickland* and *Hill*.

*Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The Court must also determine if the Superior Court reasonably applied the *Strickland/Hill* standard to the facts of Petitioner's case. When performing this inquiry, the Court must review the court's denial of Petitioner's ineffective assistance of counsel allegations through a "doubly deferential" lens. *See Harrington*, 562 U.S. at 105-06. "[T]he question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id.* And finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 101.

In his Rule 61 proceeding, Petitioner argued that defense counsel was ineffective for arranging a face-to-face meeting on the morning of his final case review which included the prosecutor and an individual Petitioner believed was the State's chief investigating officer, Detective Lloyd. (D.I. 10-14 at 8 n. 24)

35

Petitioner contended that he suffers from PTSD as a result of being shot by police when he was trying to avoid arrest.  Since Detective Lloyd was at the scene of the shooting, Petitioner asserted that he was placed under duress and felt intimidated by being in the presence of an individual he believed was Detective Lloyd.  He also asserted that both the prosecutor and the individual he believed to be Detective Lloyd "bombarded [him] with taunts, challenge[s], and insults."  (D.I. 10-14 at 21) Petitioner argued that the duress he was under during the meeting caused him to relent to defense counsel's suggestion that he enter a plea agreement and, therefore, despite what the transcript of the plea colloquy may indicate, the plea offer was not knowingly, intelligently, and voluntarily entered.  (D.I. 10-14 at 8 n. 24)

The Superior Court Commissioner denied Claim Two after determining that Petitioner failed to satisfy both prongs of the *Strickland* standard.  The Commissioner based her conclusion that defense counsel's act of arranging the meeting in the holding cell, and his actions during that meeting, did not constitute deficient performance under *Strickland*'s first prong on two determinations: (1) defense counsel's version of who attended the meeting and what happened during the meeting was more credible than Petitioner's version; and (2) Petitioner was bound by his statements during the plea colloquy that he was satisfied with defense counsel's representation. *See Thomas*, 2018 WL 1580553, at *4.  The

36

Commissioner found "counsel's representations [in his Rule 61 affidavit] far more credible than [Petitioner's] self-serving, vague allegations" and that Petitioner "ha[d] failed to allege any facts sufficient to substantiate his claim that is attorney was ineffective." *Thomas*, 2018 WL 1580553, at *4. Defense counsel's Rule 61 affidavit provided the following information:

> Prior to the Final Case Review, I and Mr. Gary K. Marshall of Shore Investigations met with [Petitioner] on numerous occasions at James T. Vaughn Correctional Center in Smyrna. Mr. Robert C. Collins, II, Esq., co-counsel, also occasionally attended these meetings. The purpose of these meetings was to discuss potential plea options as well as trial strategy, should the case go to trial. We also discussed the ramifications and pitfalls of taking a plea that involved a Pre-sentence Investigation ("PSI"). [Petitioner] knew all three members of his defense team on a first-name basis. Mr. Marshall had also met with him individually on more than one occasion. [Petitioner] knew exactly who Mr. Marshall was and what his role was on his defense team.

> The meeting between [the prosecutor] and [Petitioner] and his defense team was not impromptu. I, Mr. Collins, and Mr. Marshall jointly met with [Petitioner] in the holding area at the beginning of his Final Case Review. I explained to [Petitioner] what [the prosecutor] was offering in terms of a plea. [Petitioner] was not interested in a plea involving 26-years of Level V time. We again discussed the possibility of bringing [the prosecutor] down to the holding area to speak to him. I explained that sometimes, when prosecutors meet defendants face-to-face, they tend to lighten up with respect to their plea offers. [Petitioner] and his defense team agreed that this might be a good course of action to take. And of note, [the prosecutor] did reduce her plea offer from 26 years down to 24 years

37

subsequent to this meeting.

\* \* \*

At the meeting, [the prosecutor] was direct in her comments to [Petitioner] regarding his chosen lifestyle and penchant for criminal activity. Again though, it was not the time to argue with [the prosecutor] or to challenge what she said. The time for that was during further plea negotiations. And Mr. Marshall never injected himself into [the prosecutor's] comments. He did join in on the conversation after she departed.

\* \* \*

Regarding the GROUNDS FOR RELIEF section of [Petitioner's] Motion for Postconviction Relief I submit the following:

1. Ground One [(Ineffective Assistance of Counsel for Arranging Meeting with Prosecutor)]. Denied. As previously stated, the meeting with the prosecutor was discussed with [Petitioner] well before hand. **The goal of the meeting was to get the prosecutor to reduce the Level V time she was asking for in her plea offer. She did reduce her offer from 26 years down to 24 years. Unfortunately, [Petitioner] took offense to what she said at the meeting and from that point on refused to accept anything she offered that did not involve a PSI, despite our very strong warnings to the contrary.** And again, [Petitioner] knew [Mr.] Marshall of Shore Investigations on a first-name basis.

(D.I. 10-8 at 159-63) (emphasis added). The Commissioner concluded that

defense counsel's actions "were extremely reasonable under all the circumstances,

especially in light of the overwhelming evidence against [Petitioner]," and noted

38

that Petitioner had admitted his guilt several times during his plea colloquy. *See*

*Thomas*, 2018 WL 1580553, at *4.

After concluding that defense counsel's representation was not ineffective

under the first prong of the *Strickland* test, the Commissioner also concluded that

Petitioner did not satisfy the second (prejudice) prong of the test. The

Commissioner opined:

> Even assuming, arguendo, that counsel's representation of
> [Petitioner] was somehow deficient, [Petitioner] must
> satisfy the second prong of the *Strickland* test, prejudice.
> In setting forth a claim of ineffective assistance of counsel,
> a defendant must make concrete allegations of actual
> prejudice and substantiate them or risk dismissal. In an
> attempt to show prejudice, [Petitioner] simply asserts that
> his counsel was ineffective and speculates that he "may"
> have been given a more favorable plea. Instead he was
> given a better plea and he himself chose not to accept it
> and risk a presentence investigation. His statements are
> insufficient to establish prejudice, particularly in light of
> the overwhelming evidence against him. Therefore, I find
> [Petitioner'] grounds for relief are meritless.

*Thomas*, 2018 WL 1580553, at *4. The Commissioner then considered

Petitioner's contention that his guilty plea was coerced by reviewing the transcript

of the guilty plea colloquy and Truth-in-Sentencing Guilty Plea Form. *Id.* at *5

The Commissioner found that Petitioner was bound by the statements he made

during the plea colloquy because he did not provide any clear and convincing

evidence to the contrary, and held that Petitioner entered his guilty plea knowingly

39

and voluntarily. *Id.* The Superior Court adopted the Commissioner's findings and denied Claim Two.

In this proceeding, Petitioner argues that the Commissioner and Superior Court unreasonably determined the facts when concluding that defense counsel's actions satisfied the performance prong of *Strickland*, because that determination was made without the benefit of the October 18, 2018 Investigative Report. (D.I. 1 at 5) The Delaware Supreme Court addressed this contention when it affirmed the Superior Court's denial of Claim Two, opining:

> [Petitioner] alleges that coercion occurred at a meeting shortly before his plea was entered. He alleges that the meeting was attended by his attorney, the assigned prosecutor, the State's lead investigator, and himself. The affidavit of trial counsel filed in the postconviction proceedings in Superior Court stated that the meeting was attended by trial counsel, the prosecutor, [Petitioner] and a defense investigator. The Superior Court accepted as fact that the meeting attendance was as stated in trial counsel's affidavit. When [Petitioner] filed his reply brief in this court, he attached as an exhibit an investigation performed by O'Rourke Investigative Associates, Inc. which includes summaries of interviews with the defense investigator and the State's lead investigator which say the State's lead investigator, not the defense investigator, was the fourth person at the meeting. The O'Rourke investigation was done after the appeal in this case was filed. [Petitioner] argues that the O'Rourke report shows that his description of the meeting was correct and adds weight to his claim that he was coerced into pleading guilty. We are satisfied, however, that the identity of the fourth attendee had no bearing on the Superior Court's conclusion that [Petitioner's] plea was entered knowingly, intelligently

40

and voluntarily, a conclusion we affirm after having considered [Petitioner's] reply brief and the O'Rourke investigation.

*Thomas*, 2019 WL 2183830, at *1 n.1.

On habeas review, the Court "must presume that state-court factual findings – including its credibility findings – are correct unless the presumption is rebutted by clear and convincing evidence." *Vickers v. Sup't Graterford SCI*, 858 F.3d 841, 850 (3d Cir. 2017), *as amended* (July 18, 2017). While the Delaware Supreme Court did not explicitly address the Superior Court's analysis for the separate *Strickland* prongs and, as such, did not explicitly address how the Investigative Report may have affected the Superior Court's credibility determination, its holding that Petitioner's guilty plea was voluntary, intelligent, and knowing demonstrates that the Delaware Supreme Court did not view the Investigative Report as rebutting the Superior Court's factual determination that defense counsel's actions did not create a coercive or intimidating atmosphere. After reviewing the record, the Court finds that the Delaware Supreme Court reasonably determined the facts when making both its explicit and implicit conclusions. For instance, the Investigative Report does not substantiate Petitioner's assertions that he was "bombarded with taunts [and] challenged [with] insults that were thrust upon him" by the prosecutor and Detective Lloyd. (D.I. 10-14 at 21) The Report also does not indicate that Detective Lloyd or the prosecutor used any other

41

coercive methods to obtain Petitioner's guilty plea. And, the Report does not substantiate Petitioner's contention that he suffers from PTSD in the presence of police officers. Importantly, Petitioner's claim that he was coerced is belied by the fact that he insisted on changing the terms of the offer the State presented after the meeting in the holding area to include a PSI, despite defense counsel's advocating against the PSI and for immediate sentencing.

Nevertheless, even if the Court were to assume that the Superior Court unreasonably determined the facts and unreasonably applied *Strickland* when concluding that defense counsel's actions did not constitute deficient performance under *Strickland*'s first prong, Petitioner's instant argument does not demonstrate that the Superior Court unreasonably applied *Strickland* when concluding that Petitioner failed to satisfy the second (prejudice) prong of the *Strickland/Hill* standard. As an initial matter, the Investigative Report only provides information about the attendees at the meeting in the holding cell; it does not provide any information about what occurred during that meeting or remotely address what occurred during Petitioner's plea colloquy. More importantly, however, Petitioner has failed to demonstrate a reasonable probability that, but for counsel's errors, he would have rejected the State's plea offer and insisted on proceeding to trial. At the time of his guilty plea, Petitioner had multiple pending cases and faced a minimum mandatory sentence of sixty-two years if conviction on all charges. *See*

42

*Thomas*, 2018 WL 1580553, at *1. Petitioner does not assert he is actually innocent, and the evidence of Petitioner's guilt was overwhelming based upon the police surveillance of him and Detective Lloyd's controlled buy. Additionally, regardless of who attended the meeting, the meeting resulted in the prosecutor reducing the sentence recommendation contained in the original plea offer by two years. Petitioner insisted on changing the terms of that plea offer to include a PSI in the hope of receiving a lower sentence, against defense counsel's advice. Yet, defense counsel's suggestion that Petitioner meet with the prosecutor still resulted in a measurable benefit, because the State dropped numerous charges against Petitioner in exchange for his guilty plea.

Furthermore, Petitioner has not provided any clear and convincing evidence overcoming the presumptive truthfulness of his declarations to the Superior Court during his plea colloquy. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity," which creates a "formidable barrier in any subsequent collateral proceedings."). During his plea colloquy, the Superior Court asked Petitioner if "anyone forced [him] or threatened [him] to enter into this pleas," and Petitioner answered that no one had done so. (D.I. 10-2 at 26) Petitioner also confirmed his understanding that the Superior Court was not bound by any agreement regarding sentencing he may have made with the State or any agreement he may make with the State between the

43

colloquy and sentencing. (D.I. 10-2 at 26) Petitioner also admitted he was guilty of the charges against him, and that he was aware of the maximum penalty for those offenses. (D.I. 10-2 at 25) In his Truth-In-Sentencing Guilty Plea Form, Petitioner confirmed that he had "freely and voluntarily decided to plead guilty." (D.I. 10-6 at 3-5)

After viewing Petitioner's presumptively valid statements in conjunction with the evidence against him, the Court concludes that Petitioner has failed to establish a reasonable probability that, but for Detective Lloyd's presence at the meeting, or defense counsel's alleged errors during that meeting, he would have rejected the State's plea offer and insisted on proceeding to trial. Given this determination, the Court concludes that the Delaware state courts reasonably applied the *Strickland/Hill* standard in holding that Petitioner failed to demonstrate he suffered actual prejudice as a result of defense counsel's actions. The Court further concludes that the Delaware Supreme Court did not unreasonably apply *Strickland* to the facts of Petitioner's case when finding that the "newly discovered" information in the Investigative Report did not affect the determination that Petitioner's guilty plea was not the result of coercion. Accordingly, the Court will deny Claim Two for failing to satisfy the standard in § 2254(d).

## V.    CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability.  *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2).  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief. Reasonable jurists would not find this conclusion to be debatable.  Accordingly, the Court will not issue a certificate of appealability.

## VI.    CONCLUSION

For the reasons discussed, the Court will deny the instant Petition without holding an evidentiary hearing or issuing a certificate of appealability.  The Court will enter an order consistent with this Memorandum Opinion.